UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILY SUZZAN WILLIAMS,<br><br>  Plaintiff,<br><br>  v.<br><br>NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security,<br><br>  Defendant. | Case No.: 1:15-cv-01775-BAM<br><br>**ORDER REVERSING AGENCY'S DENIAL OF BENEFITS AND ORDERING REMAND** |

**INTRODUCTION**

Plaintiff Emily Suzzan Williams ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2]

Having considered the parties' briefs, along with the entire record in this case, the Court finds that the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence in

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this action.
[2] The parties have consented to the jurisdiction of the United States Magistrate Judge. (Docs. 6, 8).

1

the record and is not based upon proper legal standards. Accordingly, the Court recommends the Commissioner's determination be REVERSED AND REMANDED for further proceedings.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed her application for supplemental security income on November 30, 2011. AR 171-78.[3] Plaintiff alleged that she became disabled on February 8, 2008. AR 171. Plaintiff's application was denied initially and on reconsideration. AR 112-15, 117-21. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ Serena Hong held a hearing on December 11, 2013, and issued an order denying benefits on February 28, 2014. AR 13-24, 29-55. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 5-7, 12. Plaintiff was granted an extension of time to file an action seeking court review. AR 1. Plaintiff filed the instant court action on November 24, 2015. (Doc. 1).

### Hearing Testimony

The ALJ held a hearing on December 11, 2013, in Fresno, California. AR 29-55. Plaintiff appeared and was represented by attorney Dennis Bromberg. Plaintiff's mother Lisa Claire Williams and impartial vocational expert Judith Najarian also appeared. AR 31, 48.

In response to questions from the ALJ, Plaintiff testified that she was born in August 1992, and lived with her parents in an apartment complex, along with her parents' roommate and her 7-and-a-half-month old son. She does not have any source of income and does not receive any benefits. She does not have a driver's license because of her seizure disorder. Plaintiff also testified that the highest level of education she completed was the eleventh grade. She does not have a GED or any special vocational training. She has never tried to work. AR 33-34.

When asked what prevented her from working, Plaintiff testified that she has a seizure disorder. She has applied for jobs, but been turned down because of her education or the risk of seizure on the job. She also has a learning disability—dyslexia—and had special education classes in eighth grade and in high school. AR 34-35.

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

When asked about treatment, Plaintiff testified that she sees her neurologist every six months. She takes Keppra, and has not had a seizure since February of 2012. It was a grand mal seizure. She also has petit mal seizures, but could not recall the last time she had one. She does not have any side effects from her medication, and takes it as prescribed. AR 35-36, 37-38.

When asked about a typical day, Plaintiff testified that she will take care of her son until he takes a nap. She will do laundry and vacuum. When her son wakes up, she takes care of him and plays with him. She does not have problems taking care of her son, but she has help all the time. AR 36-37. Plaintiff confirmed that before she had her own child, she used to help with her sister's kids, and had some pet rats. She also uses a computer for Facebook and for learning about her disability, and she likes to sew. AR 38-39.

In response to questions from her attorney, Plaintiff testified that she did not remember going to the hospital on August 27, 2013, with a seizure. Plaintiff affirmed that she had problems with depression in the past, and was physically and sexually abused by her father as a child. She also witnessed her father abuse her little brother. Plaintiff last took medications for depression when she was 15 or 16. She stopped taking those medications because her neurologist told her she did not need them, and Prozac and Abilify should not be mixed with her seizure medication. AR 39-41.

When asked about her seizures, Plaintiff testified that she can sometimes tell when they are coming. During grand mal seizures, she is usually unconscious. When she awakes, she is usually confused and it can take two to six hours to feel normal. After petit mal seizures, it will take her two to four hours to get back to normal. During petit mal seizures, she has been told that she stares and will sometimes go unconscious. While pregnant, she was switched to a new seizure medication, which was Keppra, and she has remained on it. AR 41-43.

Plaintiff reported that she will have nightmares every three to six months about her abuse. Her appetite is fairly good and she has a lot of energy, but it is very hard for her to focus because she gets distracted and gazes into space. She cannot watch an hour long television show. AR 43-44.

When asked about indications in her record about hurting herself, Plaintiff testified that she was a cutter, and last cut herself when she was 16-and-a-half. She also attempted suicide when she

was 15-and-a-half, overdosing on her medications. She felt sick and sad about taking a kitchen knife to her ex-boyfriend's throat. She no longer has thoughts of suicide. AR 44-45.

When asked about activities, Plaintiff testified that she will go out with friends if she can find a babysitter. At home, she will vacuum, take out her dog, wash dishes, and cook occasionally. AR 46-47.

Following Plaintiff's testimony, Plaintiff's counsel elicited testimony from Plaintiff's mother, Lisa Claire Williams. Ms. Williams testified that she has witnessed Plaintiff's grand mal and petit mal seizures. When Plaintiff has petit mal seizures, she stares off for about 15 or 20 minutes at time. She is basically unresponsive. She last witnessed Plaintiff having a petit mal seizure two or three days prior to the hearing, and Plaintiff usually has them once or twice a week. AR 48-50.

Following Ms. Williams' testimony, the ALJ elicited testimony from the vocational expert ("VE") Judith Najarian. For the first hypothetical, the ALJ asked the VE to assume an individual of claimant's age and education with no past relevant work. This individual could perform work at all exertional levels, but could only occasionally climb ladders, ropes or scaffolds and must avoid concentrated exposure to hazards, such as unprotected heights and moving machinery. This individual also was limited to performing only simple, routine tasks and only superficial interaction with coworkers, supervisors and the public. The VE testified that there would be work in the national economy that such an individual could perform, such as linen room attendant, marker, or mail clerk/sorter. AR 52.

For the second hypothetical, the ALJ asked the VE to assume the same individual as in the first hypothetical, but to add that this person would be unable to complete the workday three or more times a month. The VE testified that there would not be any jobs. AR 53.

**Medical Record**

The entire medical record was reviewed by the Court. AR 248-545. The relevant medical evidence is referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled. AR 16-24. More particularly, the ALJ found that Plaintiff

had not engaged in substantial gainful activity since November 30, 2011, her application date. Further, the ALJ identified seizure disorder, learning disorder, cognitive disorder and anxiety disorder as severe impairments. AR 18. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or medically equal the severity of any of the listed impairments. AR 18-20.

Based on her review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform work at all exertional levels, but could only climb ladders, ropes and scaffolds occasionally, should avoid concentrated exposure to hazards, and was limited to simple, repetitive tasks and superficial interactions with coworkers, supervisors and the public. AR 20-23. The ALJ found that Plaintiff did not have any past relevant work, but there were jobs existing in significant numbers in the national economy that she could perform. AR 23-24. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act since November 30, 2011. AR 24.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commission's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

**DISCUSSION**[4]

Plaintiff's sole argument is that the ALJ's finding that Plaintiff's intellectual disability did not meet the requirements of Listing 12.05C at step three of the sequential evaluation is contrary to law and not supported by substantial evidence. (Doc. 12).

At step three, the ALJ considers the medical severity of the claimant's impairments, and must determine whether those impairments meet or equal one of the listed impairments. 20 C.F.R. § 416.920(a)(4)(iii). If the claimant has an impairment(s) that meets or equals one of the listings, and also meets the duration requirement, then the claimant will be found disabled. *Id.* The burden of proof is on the Plaintiff to establish that her impairments meet or equal a listing. *Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir. 1999).

Here, the ALJ determined that Plaintiff did not meet the criteria of Listing 12.05C. In so doing, the ALJ acknowledged that Plaintiff had IQ scores spanning the range from 63 to 74, but found that she did "not have an additional physical or other mental impairment imposing an additional and significant work-related limitation of function." AR 20.

At the time of the ALJ's decision, Listing 12.05 addressed "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the

---

[4] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

6

developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." Listing 12.05, 20 C.F.R., Pt. 404, Subpt. P, App. 1. The required severity for this disorder is met when the requirements in Listing 12.05C are satisfied. *Id.* Listing 12.05C requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. Listing 12.05(C), 20 C.F.R., Pt. 404, Subpt. P, App. 1. Thus, Listing 12.05C has three main components: (1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) an IQ score of 60 to 70; and (3) a physical or other mental impairment causing an additional and significant work-related limitation. *Id.*; *see also Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013); *Martinez v. Colvin*, 2015 WL 4662620, at *4 (E.D. Cal. Aug. 5, 2015).

### 1. Valid IQ Score of 60 to 70

As noted above, the ALJ determined that Plaintiff had IQ scores ranging from 63 to 74. AR 20. The Commissioner has not challenged Plaintiff's assertion that she established a qualifying IQ score. *See generally* Def's Opp'n to Pl's Opening Br., Doc. 15.

### 2. Physical or Other Mental Impairment Imposing Additional and Significant Work-Related Limitations

The ALJ also found that Plaintiff did not have a physical or other mental impairment imposing an additional and significant work-related limitation of function. AR 20. Plaintiff now argues that the ALJ's own findings at step two establish that she suffers from additional severe impairments that fulfill the listing requirement of a physical or other mental impairment imposing additional and significant work-related limitations. (Doc. 12 at 10-11).

"[A]n impairment imposes a significant work-related limitation of function when its effect on a claimant's ability to perform basic work activities is more than slight or minimal." *Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir. 1987). A finding of a severe impairment at step two is a per se finding of an impairment imposing additional and significant work-related limitation of function. *Martinez*, 2015 WL 4662620 at *7 (finding of a severe impairment other than "borderline intellectual functioning" is a per se finding of an "impairment imposing additional and significant work-related limitations of functions" per Listing 12.05(C)) (citations omitted). In this case, the ALJ's finding at step two that

7

1  Plaintiff has severe impairments of seizure disorder, learning disorder, cognitive disorder and anxiety
2  disorder satisfies the work-related limitation requirement of Listing 12.05C. *See Rasmussen v.*
3  *Berryhill*, 2017 WL 416130, at *4 (E.D. Cal. Jan. 30, 2017) (noting that finding of severe impairments
4  at step two satisfies listing 12.05C requirement of work-related limitation of function); *Strickland v.*
5  *Colvin*, 2015 WL 1728354, at *4 (C.D. Cal. Apr 15, 2015) (same); *Randle v. Colvin*, 2014 WL
6  7150702, at *2 n.4 (C.D. Cal. Dec. 12, 2014) (same where parties did not dispute second prong of
7  section 12.05(C)).

8       Plaintiff therefore has met her burden to establish Listing 12.05C's requirement of a physical
9  or other mental impairment beyond her intellectual functioning imposing an additional and significant
10  work-related limitation. Accordingly, the Court finds that the ALJ erred at step three by finding that
11  Plaintiff did not have a physical or other mental impairment imposing an additional significant work-
12  related limitation.

13       **3. Deficits in Adaptive Functioning**

14       Plaintiff argues that the ALJ erred by failing to make a finding regarding "deficits in adaptive
15  functioning prior to age 22." (Doc. 12 at 11). Plaintiff further argues that the record evidence
16  demonstrates the requisite adaptive deficits. (*Id.* at 12). The Commissioner counters that the ALJ
17  properly found that Plaintiff did not have deficits in adaptive functioning necessary to satisfy Listing
18  12.05C based on Plaintiff's documented ability to engage in a wide range of daily activities. The
19  Commissioner also argues that the objective medical and opinion evidence lend support to the ALJ's
20  finding that Plaintiff did not have deficits in adaptive functioning. (Doc. 15 at 10-12).

21       As an initial matter, the Commissioner argues that adaptive activities are defined as including
22  cleaning, shopping, cooking, taking public transportation, paying bills, and caring for grooming and
23  hygiene as set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(1). This argument is not
24  persuasive. Section 12.00(C)(1) is an express discussion of "*Activities of daily living*," which are
25  noted to include certain "adaptive activities," such as cleaning and cooking. *Id.* (italics in original).
26  However, there is nothing in section 12.00(C)(1) to suggest that daily activities are the primary or even
27  sole means of demonstrating deficits in adaptive functioning during the developmental period. Indeed,
28  "[w]hen determining whether a claimant demonstrates deficits in adaptive functioning, courts consider

a variety of factors, including a claimant's poor academic performance, participation in special education, and work history." *Esparza v. Colvin*, 2016 WL 3906934, at *8 (E.D. Cal. Jul. 18, 2016) ("Deficits in adaptive functioning may also be shown circumstantially through evidence of attendance in special education classes, dropping out of high school prior to graduation, difficulties in reading, writing, or math, and low skilled work history"); *see also Blacktongue v. Berryhill*, ---F.Supp.3d---, 2017 WL 389977, at *5 (W.D. Wash. Jan. 25, 2017) ("To demonstrate deficits in adaptive functioning during the developmental period a claimant may rely on circumstantial evidence such as "attendance in special education classes, dropping out of high school prior to graduation, difficulties in reading, writing or math, and low skilled work history.") (citations omitted); *Pedro v. Astrue*, 849 F.Supp.2d 1006, 1011–12 (D. Or. 2011) ("A claimant may use circumstantial evidence to demonstrate adaptive functioning deficits, such as 'attendance in special education classes, dropping out of high school prior to graduation, difficulties in reading, writing or math, and low skilled work history.'") (citations omitted); *Campbell v. Astrue*, 2011 WL 444783, at *17 (E.D. Cal. Feb. 8, 2011) ("deficits in adaptive functioning" refer to deficits occurring during the developmental period such as "attendance in special education classes, dropping out of high school prior to graduation, difficulties in reading, writing or math, and low skilled work history"); *Payne v. Astrue*, 2010 WL 654319, at *11 (D. Ariz. Feb. 23, 2010) (noting that Third and the Eighth Circuits have found that "a claimant's participation in special education classes, poor academic performance, and low-skilled work history imply evidence of deficits in adaptive functioning during the developmental period."). Additionally, some courts consider that "[d]eficits in adaptive functioning are shown by 'significant limitations in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety.'" *Taylor v. Astrue*, 2011 WL 4055243, at *18 (E.D. Cal. Sept.12, 2011) (citing DSM-IV); *Mays v. Colvin*, 2014 WL 6893825, at *6 (E.D. Cal. Dec. 8, 2014) (same). In short, evidence of deficits in adaptive functioning are not limited, as the Commissioner suggests, to activities of daily living.

Next, the Commissioner devotes considerable discussion in arguing that the record, Plaintiff's daily activities, and the medical and opinion evidence support the ALJ's finding that Plaintiff did not have deficits in adaptive functioning consistent with the criteria of Listing 12.05C. However, the

Commissioner's argument cannot be squared with the ALJ's failure to identify or explain at step three whether or not Plaintiff had deficits in adaptive functioning initially manifested during the developmental period. An ALJ's decision must be reviewed based on the reasoning and factual findings offered by the ALJ and not "*post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009).

In this instance, the Court finds that the ALJ failed to sufficiently address the relevant factors necessary to determine whether Plaintiff had deficits in adaptive functioning during the developmental period. There is evidence in the record that Plaintiff attended special education classes, dropped out of high school prior to graduation, had difficulties with reading and had no skilled work history. *Esparza*, 2016 WL 3906934 at *8. However, there also is evidence in the record that Plaintiff did not have significant limitations in her activities of daily living or self-care. AR 19, 21. Because the ALJ failed to address whether Plaintiff had significant limitations in other areas, such as social/interpersonal skills, self-direction, functional academic skills, work, health or safety, the Court cannot conclude that the decision is free of legal error and supported by substantial evidence. For instance, there is evidence that Plaintiff had at least moderate difficulties in social functioning (AR 69-70, 3A, 325), including an inability to travel alone or manage money (AR 319), limitations in health and safety due to her seizure disorder, including avoiding driving (AR 252) and other hazards (AR 68, 98), limitations in her functional academic skills, including special education classes for learning disabilities (AR 35, 318), deficits in her visual and verbal reasoning, working memory, processing speed, visuomotor control and "especially in immediate/delayed visual/verbal memory" (AR 325), and a poor prognosis for her learning disabilities (AR 325), and limitations in work, having no work history and reported denial of jobs due to education and seizure disorder (AR 35).

**4. Remand is Required**

The Court has considered Plaintiff's request to award benefits based on an argument that she meets Listing 12.05C. However, the Court finds remand more appropriate. The circumstances of this case indicate that there are outstanding issues at step three that must be resolved before a final determination can be made. *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) ( "Remand for further

proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find claimant disabled if all the evidence were properly evaluated."). The Ninth Circuit has held that when "additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) (remanding "for proper consideration of step three equivalence"). Here, further administrative review may remedy the ALJ's step three analysis and thus remand is appropriate.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's disability determination warrants remand. Accordingly, the decision is **REVERSED** and the case **REMANDED** to the ALJ for further proceedings. On remand, the ALJ will address the deficiencies identified by the Court. If necessary, the Commissioner may hold further hearings and receive additional evidence.

Accordingly, the Clerk of the Court is **DIRECTED** to enter judgment in favor of Plaintiff Emily Suzzan Williams and against Defendant Nancy A. Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **March 29, 2017**         /s/ *Barbara A. McAuliffe*         
                                UNITED STATES MAGISTRATE JUDGE